**C. Lee ANDERSON and Robert Gulden, Individually and on behalf of others similarly situated, Appellants,**

v.

**COLONIAL COUNTRY CLUB.**

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 1999.

Decided Oct. 25, 1999.

C. Lee Anderson, pro se, for appellants.

Thomas J. Weber, Harrisburg, for appellee.

Before FRIEDMAN, J., FLAHERTY, J., and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

C. Lee Anderson and Robert Gulden, individually and on behalf of others similarly situated [1] (Appellants) appeal from an order of the Court of Common Pleas of Dauphin County (trial court), which, on cross-motions for summary judgment, denied Appellants' motion and granted the motion of Colonial Country Club (Colonial or the Club). Specifically at issue is the authority of Colonial's Board of Directors to impose an assessment on Colonial's members in a manner which results in individuals within the same membership category paying different amounts.

The relevant facts and procedural history of this case can be briefly summarized. Colonial is a non-stock, non-profit corporation established as a country club in the early 1900s. Colonial operates under the provisions of its bylaws which, under Article 2, Section 1, entrusts control and management of Colonial and its affairs and property to a nine-member Board of Directors. (Bylaws, Article 2, Section 1, R.R. at 9a.) The bylaws also make it the duty of Colonial's Board of Directors to carry out the object and purposes of the Club, subject to their interpretation of the bylaws. (Bylaws, Article 2, Section 4, R.R. at 10a.) Colonial offers several classes of membership; the admission fees and annu-al dues for each class is set forth in the addendum to the Club's bylaws. (Bylaws, Article 7, Section 1 and addendum, R.R. at 17a–18a, 24a.) In addition, historically, when Colonial has faced a financial deficit, the Board of Directors would assess each Club member an amount in order to overcome the deficit. In fact, the Club's membership application [2] contains an acknowledgment by the prospective member that "If this application is accepted by the Board of Directors, the undersigned agrees that he/she will be liable for all charges and obligations imposed by the Club, including but not necessarily limited to dues, *assessments,* food and beverage purchases, other fees established by the Board of Directors." (S.R.R. at 17b, *see also* 13b, 15b; Affidavit of Robert Pierce, ¶ 4, R.R. at 11b.) (Emphasis added.)

In July of 1997, in order to meet the Club's financial shortfall, the Board of Directors imposed an assessment on Colonial's members. The Board of Directors explained the assessment in a letter included with each member's monthly statement for July. In the letter, the Board of Directors indicated that, in trying to make the assessment equitable, it considered each category of membership and included a utilization scale for golfing members (encompassing the active/spouse, active and spousal membership categories). Under this method, those golfing members who supported Colonial by usage would not pay as much as a member who did not use Colonial with the same regularity.[3] (R.R.

1. Initially, this case was filed as a class action identifying four individuals as the named plaintiffs; however, following the filing of the complaint, two of the originally named plaintiffs withdrew from the suit. On April 24, 1998, following a series of procedural steps, the parties had a status conference to consider the question of class certification. At the status conference, the court determined that the parties should file motions for summary judgment and deferred the question of whether this suit properly qualifies as a class action until after the court's ruling on the summary judgment motions.

2. Individuals desiring to join Colonial must apply and be approved for membership. (Bylaws, Article 7, Section 13, R.R. at 21a.)

3. The letter indicated that Colonial was experiencing financial difficulties because of a decline in membership and that, in May 1997, the Board of Directors called a special meeting of the membership to alert members to the situation. The letter went on to state that, at the quarterly meeting in June 1997, the Board of Directors again explained the deficit and suggested that initiation fees be adjusted in order to help recruit new members. The

at 25a.) Subsequently, aware of the concerns of some members regarding the assessment, the Board of Directors convened a special meeting of the membership on September 18, 1997 to discuss and vote on the assessment and the method used in its calculation. The majority of members present at that meeting voted in favor of the assessment and the method used.

Appellants, as members of Colonial [4] dissatisfied with the form of the assessment, initiated a class action on September 2, 1997, seeking: (1) a declaration that the Board of Director's assessment is null and void because the assessment itself, or the manner in which it was imposed, is illegal; (2) an injunction prohibiting Colonial from enforcing any suspension or termination procedures connected with non-payment of the assessment; and (3) a judgment against Colonial for imposition of the assessment. [5] (R.R. 1a–8a.) Colonial filed an answer to Appellants' complaint along with new matter, and Appellants filed a reply to Colonial's new matter. The pleadings were closed, and the parties filed cross-motions for summary judgment.

In a November 17, 1998 decision, the trial court concluded that the provision of the bylaws which gives the Board of Directors the control and management of the Club is sufficient to permit the imposition of the assessment. Further, the trial court determined that the Board of Directors imposed the assessment only after calling a special meeting of the membership, at which a majority of those attending voted to implement the assessment in the manner decided upon by the Board of Directors. Finally, the trial court noted the appellate court's admonition that the courts stay out of the affairs of corporate entities unless the acts complained of constitute fraud, gross mismanagement or are ultra vires. *See Mulrine v. Pocono Highland Community Ass'n, Inc.*, 151 Pa. Cmwlth. 146, 616 A.2d 188 (1992). For these reasons, the trial court granted Colonial's motion for summary judgment and denied Appellants' motion for summary judgment The present appeal followed. [6]

On appeal, [7] Appellants maintain their contention that the assessment is null and

members in attendance at the June meeting decided not to adjust the initiation fees, recognizing that an assessment would be required to support the budget. Based on that decision, the Board of Directors, with the finance committee's recommendation, approved the membership assessment on what it determined to be the most equitable basis. Specifically, the Board of Directors considered each category of membership and included a utilization scale for golfing members. The utilization scale was broken down into three categories based on the average monthly amount those members spent at Colonial in the past year. The Board of Directors then applied a $25 differential to each category within the golfing membership. (R.R. at 25a.)

4. Colonial's bylaws, at Article 7, Section 19, require a member to pay all dues, fees and charges within 30 days following the date of the statement or face a penalty. Continued delinquency in payment results in suspension and, ultimately, termination from membership in the Club. (R.R. at 23a.) Appellants here are no longer members of Colonial, having been terminated for non-payment of the assessment. (R.R. at 33a.)

5. Appellants also sought a preliminary injunction to prohibit Colonial from suspending or terminating the membership of any member for nonpayment of the assessment pending the outcome of the litigation. The trial court denied the preliminary injunction by order dated October 2, 1997. (Trial ct. op. at 2.)

6. Appellants initially appealed to the Superior Court; the Superior Court sua sponte transferred the appeal to this court, which has exclusive appellate jurisdiction over the matters relating to not-for-profit corporations, such as Colonial, and their corporate affairs. *See* section 762(a)(5) of the Judicial Code, *as amended*, 42 Pa.C.S. § 762(a)(5).

7. Our scope of review of a trial court's grant of summary judgment is limited to determining whether the trial court made an error of law or abused its discretion. *Gordon v. Lewistown Hospital*, 714 A.2d 539 (Pa.Cmwlth. 1998), *appeal denied*, —— Pa. ——, 737 A.2d 744 (Pa.1999). A court may grant a motion for summary judgment only where the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

void because the Board of Directors did not have the authority under Colonial's bylaws · to impose an assessment on the Club's membership, or, if they did have such authority, the Board of Directors was not permitted to impose different levels of assessment on individuals in the same class of membership. On the other hand, Colonial asserts that it is entitled to summary judgment because Colonial had the authority to assess its members, and, given that authority, the Board of Directors had discretion to determine how to implement the assessment.

Both parties rely on different portions of section 5544(a) of the Non–Profit Corporation Law of 1988 (Non–Profit Law), 15 Pa.C.S. § 5544(a), to support their respective positions. That section provides:

A nonprofit corporation may levy dues or assessments, or both, on its members, *if authority to do so is conferred by the bylaws*, subject to any limitation therein contained. Such dues or assessments, or both, may be imposed upon all members of the same class either alike *or in different amounts or proportions, and upon a different basis upon different classes of members*. Members of one or more classes may be made exempt from either dues or assessments, or both, in the manner or to the extent provided in the bylaws.

(Emphasis added.)

### 1. Imposition of Assessment

■ To support their position and oppose Colonial's motion for summary judgment, Appellants rely on the first sentence of 15 Pa.C.S. § 5544(a), which allows a non-profit corporation to levy dues and/or

assessments on its members only *if the corporation's bylaws confer such authority*. Appellants argue that the trial court erred in determining that the general statement in Article 2, Section 1 of the bylaws, giving the Board of Directors control and management of Colonial, is sufficient to confer authority on the Board of Directors to impose the assessment on Club members.

Appellants point out that the powers of the Board of Directors, enumerated in the bylaws at Article 2, Section 4, do not include the power to assess. According to Appellants, this limitation is consistent with the fact that only three charges are imposed by the bylaws: annual dues; monthly capital funding charges; and a monthly food minimum, all of which are voted on by the membership prior to their imposition. Appellants assert that to accept the trial court's holding, i.e., that the bylaws' general placement of Club control and management in the hands of the Board of Directors authorizes the Board of Directors to impose assessments on Club members, would give the Board of Directors limitless power and render specific bylaw provisions useless. Thus, Appellants reason that the legislature requires specific authorization in the bylaws to assess. Because Colonial's bylaws do not *specifically* grant authority to the Board of Directors to impose an assessment and, in fact, do not even mention the word assessment, Appellants maintain that the Board of Directors was not authorized to make the assessment, regardless of what had been done previously. Accordingly, Appellants contend that the trial court's rulings

as a matter of law. Pa.R.C.P. Nos. 1035.1 and 1035.2; *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991) (citations omitted.). When considering a motion for summary judgment, a court must view the record in the light most favorable to the nonmoving party, construing all reasonable inferences in its favor and resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Morning Call, Inc. v. Board of Directors of Southern Lehigh*

*School District,* 164 Pa.Cmwlth. 263, 642 A.2d 619 (1994), *appeal denied,* 539 Pa. 698, 653 A.2d 1235 (1994). The moving party has the burden of proving the nonexistence of any genuine issue of material fact. *Allen v. Mellinger,* 156 Pa.Cmwlth. 113, 625 A.2d 1326 (1993), *appeal denied,* 537 Pa. 653, 644 A.2d 738 (1994). An entry of summary judgment may be granted only in cases where the moving party's right is clear and free from doubt. *Id.*

on the cross-motions for summary judgment should be reversed.[8]

On the other hand, Colonial recognizes the statutory language upon which Appellants rely, but maintains that the determination of whether authority to assess is "conferred" by the Club's bylaws was vested in the sound judicial discretion of the trial court. Colonial contends that the trial court did not err or abuse that discretion in determining that the power granted the Board of Directors in the bylaws, even without any magic language regarding assessments, was sufficient to confer the authority to assess on the Board of Directors. We agree.

Colonial maintains that appellate courts have found that a non-profit corporation's ability to raise money through assessments exists even in the absence of a specific grant in the bylaws. Colonial cites *Spinnler Point Colony Ass'n, Inc. v. Nash*, 689 A.2d 1026 (Pa.Cmwlth.1997), *Fogarty v. Hemlock Farms Community Ass'n, Inc.*, 685 A.2d 241 (Pa.Cmwlth.1996), *appeal denied*, 548 Pa. 639, 694 A.2d 624 (1997), and *Meadow Run and Mountain Lake Park Ass'n v. Berkel*, 409 Pa.Super. 637, 598 A.2d 1024 (1991), *appeal denied*, 530 Pa. 666, 610 A.2d 46 (1992), for the proposition that an association's controlling entity has the ability to impose an assessment in order to meet the expenses of operation and provide members with required services even if such authority is not specifically granted in the governing document.

Although these cases can be distinguished from the situation here on a variety of grounds, we believe the rationale applied in *Meadow Run* is relevant here. In *Meadow Run*, lot owners in a housing development brought an action challenging the legality of assessments imposed by the

property owners' association for maintenance of the development's common facilities absent a specific covenant in the owners' deeds permitting such charges. The court held that those who are the beneficial users of the common areas are responsible for the costs of maintaining these facilities and, thus, absent an express agreement prohibiting assessments, the association given the authority to regulate the facilities has, inherent in that authority, the ability to impose reasonable assessments to fund the maintenance of those facilities.

Like the association in *Meadow Run*, Colonial's Board of Directors was entrusted with the obligation of managing the Club. "Inherent in its right of management is the right to maintain. Maintenance costs money. Those who are entitled to enjoy the [benefits] are the ones who must pay the costs of maintenance." *Meadow Run*, 598 A.2d at 1026 (citing *Sea Gate Ass'n v. Fleischer*, 211 N.Y.S.2d 767 (1960)). Similarly, like the property owners making use of the common areas involved in *Meadow Run*, Colonial's members have the right to enjoy the benefits offered by the Club. In exchange for this right, members must pay their obligations, and when the routine payments are insufficient to satisfy the costs associated with the Club, the members must make up the shortfall.

Colonial's bylaws explicitly provide that control and management of the Club and its affairs and property rest with Colonial's Board of Directors. In addition, the bylaws direct the Board of Directors to interpret the Club's bylaws so as to fulfill the Board's duty to carry out the Club's objectives. We agree with the trial court that, by entrusting the Board of Directors with

---

**8.** Appellants also note that the trial court apparently believed that the membership met and approved the assessment *before* the Board of Directors decided to assess. (*See* trial ct. op. at 2.) Appellants are quick to point out that the meeting at which the membership approved the assessment took place in September of 1997, *after* the Board of Directors' July 1997 decision to impose the assessment.

From a reading of the trial court opinion, it does appear that the trial court might have been confused about the chronology of these events, (*see* trial ct. op. at 2, 3); however, after considering the entirety of the trial court's opinion, we do not believe that this was a critical factor in the trial court's decision.

such authority, the bylaws, if not specifically, then by necessary implication, also grant the Board of Directors the ability to maintain the Club's viability, including meeting unforeseen financial burdens. Moreover, factors outside the bylaws provide overwhelming evidence that Club members agreed to the assessment.[9]

For all these reasons, we conclude that the trial court did not err or abuse its discretion in determining that Colonial's Board of Directors had authority to impose an assessment on Club members.

### 2. Method of Assessment

■ Alternatively, Appellants argue that, even if Colonial had authority to impose an assessment, the trial court erred or abused its discretion in determining that Colonial could impose the assessments at different levels for members of the same membership class. Again, we disagree.

■ Having determined that Colonial's Board of Directors has authority to impose

the assessment, the question of its ability to do so at different levels is governed by section 5544(a) of the Non–Profit Law,[10] which unequivocally establishes Colonial's ability to assess members of the same class at different levels by providing that "such dues or assessments or both, may be imposed upon all members of the same class either alike or in different amounts or proportions, and upon a different basis upon different classes of members." As the trial court recognized, courts should not substitute their judgment for that of the directors of a corporation unless the acts complained of constitute bad faith, gross mismanagement or ultra vires. *See Mulrine.* Appellants make no such claim here, and no proof of such action is presented. Thus, the trial court did not err in determining that Colonial's manner of assessment was appropriate.

Accordingly, we affirm the trial court's grant of Colonial's motion for summary judgment.

---

9. As evidenced by the application for membership, prospective members, including Appellants, agreed during the application process to the imposition and payment of assessments. (R.R. at 13a, 15a, 17a.) Further, Colonial's prior practice of looking to its members to ensure the Club's continued financial viability permits the Board of Directors to assess members when financial difficulties require such action. In fact, Appellant Anderson admitted that he previously voted in favor of assessing members when he served on the Board of Directors. (R.R. at 33a, 36a.) Although Anderson claims that the assessments he voted for were uniform, this is irrelevant to the question of Colonial's authority to assess in the first instance. Finally, Colonial's members were apprised of the need for additional funds prior to the Board of Directors' decision to obtain the required revenue through an assessment, and the Club's members ratified the Board of Directors' actions at a special meeting of the membership on September 18, 1997.

10. Relying on section 5751(a) of the Non–Profit Law, 15 Pa.C.S. § 5751(a), Appellants claim that, as a general rule, the legislature intended members of non-profit corporations to be treated equally within a defined class. That section states in relevant part:

(a) **General rule.**—Membership in a non-profit corporation shall be of such classes, and shall be governed by *such rules of admission, retention, suspension and expulsion* as bylaws adopted by the members shall prescribe, except that all *such rules* shall be reasonable, germane to the purpose or purposes of the corporation, and equally enforced as to all members of the same class. . . .

Appellants reliance on this provision of the Non–Profit Law is misplaced. Section 5751, entitled Classes and qualifications of membership, calls for equal treatment only with regard to qualifications for membership and retention of membership, not assessments of individuals who already are members. That subject is covered by section 5544(a) of the Non–Profit Law.

Appellants also contend that in *Spinnler* and *Fogarty,* members were assessed only a *proportionate* share for maintenance, thus indicating that the manner of assessment here was improper. However, one could argue that Colonial's utilization scale, in fact, assures that members pay only their *proportionate* share of the assessment by giving a credit to those members who use the Club more often, thereby spending more money there.

*ORDER*

AND NOW, this 25th day of October, 1999, the order of the Court of Common Pleas of Dauphin County, dated November 17, 1998, is hereby affirmed.