# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Northern Chester County : 
Sportsmen's Club : 
 : 
        v. : 
 : No. 1933 C.D. 2016
 : Argued: October 17, 2017
John Mark Muller and Benjamin T. : 
Janus and William J. Dunn and : 
John Doe #3 : 
 : 
Appeal of: John Mark Muller : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge (P)
               HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION BY**
**SENIOR JUDGE COLINS**                      **FILED:  November 21, 2017**


       This matter is an appeal from an order of the Chester County Court of Common Pleas (trial court) entering judgment after trial in an equity action brought by Northern Chester County Sportsmen's Club (Club) against appellant John Mark Muller (Muller), who had been a member and Membership Secretary of the Club. For the reasons set forth below, we affirm.

        The Club is a Pennsylvania non-profit corporation organized to "promote the interest of sportsmen in the development of Shooting Sports opportunities for the greater enjoyment of the outdoor recreation, particularly hunting and fishing." (10/28/15 Amended Complaint ¶1; Muller Answer to 10/28/15 Amended Complaint ¶1; 2014 Bylaws Art. 2, Reproduced Record (R.R.) at 28a.) The Club's primary function and purpose is to provide target ranges on its

premises where its members can "shoot their guns." (3/8/16 Trial Transcript Notes of Testimony (N.T.) at 8-9.) The Club's bylaws in effect in 2014 provided that the Club was managed by a board of directors (Board) consisting of a President, Vice President (also referred to as First Vice President), Second Vice President, Recording Secretary, Membership Secretary, and Treasurer, and two Trustees. (2014 Bylaws Art. 8 § 1, Art. 9, R.R. at 30a.) These Board officers were elected for a one-year term by the members of the Club at the Club's November annual meeting. (*Id.* Arts. 5-8, Art. 11 § 1, R.R. at 29a-31a.)

The Club's 2014 bylaws required members to pay dues annually by the first Monday in August and provided that "[a]ny member failing to pay such dues within thirty (30) days after the presentation shall be notified in writing by letter forwarded to such member's last known address, and if such dues are not paid within thirty (30) days after notice, membership in club automatically ceases." (2014 Bylaws Art. 4 § 2, R.R. at 29a (emphasis omitted).) In addition, the Club required members to renew their membership annually by signing and submitting a renewal form to the Club by the first Monday in August. (3/8/16 N.T. at 167-69; Plaintiff Ex. 6; Muller Ex. 8, R.R. at 60a; 3/9/16 N.T. at 22.)

The Club's 2014 bylaws provided as follows with respect to the termination of membership:

> Expulsion of membership. A complaint against a member will be reviewed by the board to determine if further action is merited. A member who violates any of the rules of the Club may be expelled from membership by a (two thirds) vote of the members present at a regular meeting, and said member shall be given at least thirty days notice in writing that such action is pending. Service of such notice may be made personally or by registered letter mailed to said member by the club secretary before the meeting. All members will receive a copy of the notice by mail. A copy will be available

2

at the meeting. A copy will also be posted on the clubs [*sic*] website for review.

(Bylaws Art. 3 § 5, R.R. at 28a (emphasis omitted).) The 2014 bylaws contained no provisions authorizing or prohibiting the suspension of members or Board members. The Club's renewal notice contained a hold harmless agreement that stated: "I understand that my membership privileges may be revoked without refund for misconduct at any time." (Muller Ex. 8, R.R. at 60a; 3/9/16 N.T. at 22.)

Muller joined the Club in 2006 and was its Membership Secretary from 2008 to 2014. (3/9/16 N.T. at 13, 15.) Muller was also appointed by the Board as the Club's Procurement Officer. (3/7/16 N.T. at 178; 3/8/16 N.T. at 22.) In 2013, Muller purchased a $1,700 beverage cooler despite instructions from the Board President not to make the purchase and, as a result the Board removed Muller as Procurement Officer and instructed him that he could not make purchases for the Club above $50 without prior authorization. (4/13/16 Trial Court Decision at 4; 3/7/16 N.T. at 178-82; 3/8/16 N.T. at 138-39.) In response to this instruction, Muller told the Board that the rules did not apply to him and that he would continue to do what he thought necessary in the future. (3/7/16 N.T. at 181-82; 3/8/16 N.T. at 139.)

In early April 2014, when the Board was considering changing the Club's propane provider but had not made a decision, Muller, without Board approval, canceled the Club's contract with its existing provider and committed the Club to a contract with a new propane provider. (4/13/16 Trial Court Decision at 4; 3/7/16 N.T. at 182-87; 3/8/16 N.T. at 139-41.) Muller also contracted on the Club's behalf for installation of gas lines for a gas stove, without approval and even though the Club's existing stove was electric, and did not cancel this installation when instructed by the Board President not to proceed. (4/13/16 Trial

3

Court Decision at 4-5; 3/7/16 N.T. at 187-90; 3/8/16 N.T. at 141-42.) Later in April 2014, Muller took several items of equipment that belonged to the Club and sold them to a scrap yard without Board approval and despite instructions not to scrap the one item that he had discussed with other Board members. (4/13/16 Trial Court Decision at 5; 3/7/16 N.T. at 191-94; 3/8/16 N.T. at 142-44.)

On April 28, 2014, the Board met with Muller about these incidents and Muller responded that he was entitled to act unilaterally for the Club as he saw fit. (3/7/16 N.T. at 32-33, 197, 201-02; 3/8/16 N.T. at 28.) The Board then voted to recommend to the membership that Muller be expelled, suspended Muller from his position as Membership Secretary, and suspended him as a member pending the expulsion vote. (3/7/16 N.T. at 202-05; 3/8/16 N.T. at 28-29, 31-33, 145-46.) At that meeting, the Board also directed Muller to return all Club membership records and Muller refused to return those records. (4/13/16 Trial Court Decision at 5; 3/7/16 N.T. at 33-34, 205, 207; 3/8/16 N.T. at 33-37, 147.)

A vote on whether to expel Muller was held at the Club's June 2014 membership meeting. (4/13/16 Trial Court Decision at 6; Muller Ex. 2, R.R. at 34a-46a.) Eighty-seven members voted in favor of expelling Muller and eighty-four voted against expulsion; because this was less than the two-thirds required for expulsion under the bylaws, Muller was not expelled. (4/13/16 Trial Court Decision at 6; 3/7/16 N.T. at 214; Muller Ex. 2, R.R. at 46a.) Following the vote, the Board President advised Muller and the membership that Muller remained suspended and was barred from the Club premises until he complied with the Board's direction to return the Club's membership records and met with the Board. (4/13/16 Trial Court Decision at 6; 3/7/16 N.T. at 44-45, 214-15; 3/8/16 N.T. at 148; Muller Ex. 2, R.R. at 46a.) Muller did not return the Club's membership

4

records and advised the Board that he would not attend any Board meeting for the foreseeable future. (4/13/16 Trial Court Decision at 6; 3/7/16 N.T. at 207-08, 214-15; 3/8/16 N.T. at 147.) In addition, in August 2014, Muller changed the password on the Club's bulk email delivery service account and locked the Club out of sending out emails to its membership through that account. (3/7/16 N.T. at 56, 64-73.)

Muller attempted to come to Club membership meetings on several occasions after the June 2014 membership meeting and the Club called the State Police and had him removed. (4/13/16 Trial Court Decision at 6; 3/7/16 N.T. at 215; 3/9/16 N.T. at 28-29.) Muller did not submit a membership renewal form for 2014-2015 to the Club, but instead filled out and kept a renewal form that he had in his possession from his position as Membership Secretary and showed it to William J. Dunn (Dunn), who was First Vice President of the Club, and Dunn gave him a 2014-15 membership card. (3/9/16 N.T. at 21-23, 69-70; Muller Ex. 8, R.R. at 60a; Muller Ex. 9, R.R. at 61a.) Muller also gave Benjamin T. Janus (Janus), who was Treasurer of the Club, a check for his annual dues and Janus deposited the check in the Club's bank account. (3/9/16 N.T. at 6-7, 20-21; Muller Ex. 9, R.R. at 61a.) Neither Dunn nor Janus reported to the rest of the Board that Muller had renewed his membership. (4/13/16 Trial Court Decision at 6; 3/7/16 N.T. at 216-17.) Dunn and Janus subsequently resigned from the Board at the Club's August 2014 membership meeting. (3/7/16 N.T. at 50-51, 87-88.)

On September 9, 2014, the Club filed this action against Muller and John Doe defendants, seeking, *inter alia*, the return of Club records and orders enjoining Muller from contacting Club members and holding himself out as member or officer of the Club. On November 10, 2014, at a hearing on a motion

for a preliminary injunction filed by the Club, the parties reached an agreement under which Muller agreed to return all membership records to the Club. (11/10/14 Injunction Hearing Transcript at 60-65.) At this hearing, the Club learned of Muller's payment of his 2014-2015 dues to Janus and his receipt of a membership card from Dunn. (*Id.* at 23-25, 42-43.) Following the injunction hearing, Muller provided the Club a DVD containing copies of the Club's membership records, but did not return the hard copies of the membership records to the Club. (10/28/15 Amended Complaint ¶¶38-39; Muller Answer 10/28/15 Amended Complaint ¶¶38-39; 3/7/16 N.T. at 207-08; 3/9/16 N.T. at 59.) In February 2015, the Club added Janus and Dunn as defendants in substitution for John Doe defendants. The Club did not return Muller's 2014-2015 dues payment. (3/9/16 N.T. at 25.)

In 2015, while this action was pending and before trial, the Club adopted new bylaws by successive votes of the membership at the Club's June and July membership meetings. (2015 Bylaws, R.R. at 63a-71a; 3/7/16 N.T. at 231; Plaintiff Ex. 2.) The 2015 bylaws define the Club's membership year as August 1 through July 31 and provide that:

> Any member failing to renew prior to the end of the membership year must reapply as a new member. Renewals that fail to be postmarked prior to the end of the membership year will not be considered. Those members failing timely renewal may only renew in person at the August membership meeting.

(2015 Bylaws, Art. 3 § 1, Art. 4 § 2, R.R. at 63a-64a.) The 2015 bylaws further provide that "[a] member not in good standing is ineligible for renewal." (*Id.*, Art. 4 § 3, R.R. at 64a.) In addition, unlike the 2014 bylaws, the 2015 bylaws do not require a membership vote on expulsion and provide for suspension and forfeiture

6

of membership for misconduct by a majority vote of the Club's officers. (2015 Bylaws, Art. 3, Art. 19, R.R. at 63a, 70a.) The Club did not send its notice of the votes on the 2015 bylaws to Muller because it did not consider him to be a member. (3/8/16 N.T. at 73-74; 3/9/16 N.T. at 25.) Muller did not submit a membership renewal to the Club for 2015-2016, but came to the Club's August 2015 membership meeting and sought to pay his dues for the 2015-2016 membership year. (3/8/16 N.T. at 74-75.) The Club did not accept Muller's check and called the State Police. (*Id.*)

The trial court held a three-day non-jury trial on March 7 through March 9, 2016. At trial, the Club sought return of hard copies of its membership documents and other Club property and an accounting by Muller, recovery of expenses incurred as a result of Muller's actions, and orders enjoining Muller from contacting Club members, holding himself out as a member or officer of the Club, and using the Club's name. (10/28/15 Amended Complaint at 6-12.) Muller, in addition to disputing the Club's requests for relief, sought equitable relief against the Club, including an order restoring his membership in the Club. (Muller Answer to 10/28/15 Amended Complaint at 14-19, Counterclaim I.) Eight witnesses testified at trial, including the Club President, a member who did the Club's computer work, the member who served as the Club's Second Vice President in 2014, Muller, Janus, and Dunn. Muller did not dispute at trial that he took unauthorized actions with respect to the propane provider, the installation of gas lines, and the disposal of Club property as scrap. (3/8/16 N.T. at 166-67.) Rather, he contended that these actions were proper because he was "running the Club" and entitled to act unilaterally and take whatever actions he personally thought were in the Club's interests without notice to or approval by others.

7

(4/13/16 Trial Court Decision at 3-5; 3/8/16 N.T. at 165-66; 3/9/16 N.T. at 33, 64-65.) Even though his term as Membership Secretary had expired and he no longer held that position independent of the Board's suspension, Muller admitted that he still had not returned the original records to the Club in 2016, because in his view "I own them." (3/9/16 N.T. at 59.)

On April 13, 2016, the trial court issued a decision in the Club's favor. The trial court found that the Board instructed Muller in 2013 to not unilaterally make large expenditures for the Club, that Muller disregarded this instruction in changing propane providers and contracting for new gas lines, that Muller improperly disposed of Club property as scrap without authority, and that he interfered with the Club's access to its mass email account. (4/13/16 Trial Court Decision at 4-5.) The trial court also found that the Board requested that Muller return the Club's membership records and that Muller did not comply with this direction and still had not fully complied at the time of trial. (*Id.* at 5-6, 12.) The trial court held that although the membership expulsion vote failed, the Board acted within its powers to manage the Club in suspending Muller for his refusal to stop acting unilaterally and for his failure to return its membership records. (10/4/16 Trial Court Pa. R.A.P. 1925 Op. at 4-5; 4/13/16 Trial Court Decision at 8-10.)

The trial court further found that Club members were required to renew their membership each year. (4/13/16 Trial Court Decision at 6.) The trial court held that because Muller failed to submit his signed membership form for 2014-2015 to the Club and secretly gave the dues check to Janus, his membership renewal for that year was invalid. (10/4/16 Trial Court Pa. R.A.P. 1925 Op. at 6-7; 4/13/16 Trial Court Decision at 6, 10-11.) The trial court held that Muller also

8

failed to satisfy the renewal requirement for 2015-2016 and that the Club properly refused to let him renew his membership for that year because even if he remained a member, Muller "still had not returned the Club property as requested and, therefore, at the very least, his suspension remained in effect." (10/4/16 Trial Court Pa. R.A.P. 1925 Op. at 4; 4/13/16 Trial Court Decision at 6.)

The trial court in its order decreed that Muller "is not now a member of Northern Chester County Sportsman's Club" and ordered that Muller "shall return within ten (10) days of the date herein all material, written or in computer format, including but not limited to membership lists, membership records, membership cards, membership notes of Northern Chester County Sportsman's Club." (4/13/16 Trial Court Decision, Order ¶¶1-2.) With respect to Janus and Dunn, the trial court ruled that they are no longer members of the Club and ordered Dunn to return passwords and other material concerning the Club's Facebook page. (*Id.* ¶¶3-5.) The trial court made no award of damages and ordered that the parties were to bear their own legal fees and costs. (*Id.* ¶¶6-7.)

All parties filed motions for post-trial relief. The trial court denied Muller's, Janus's and the Club's post-trial motions and Dunn withdrew his post-trial motions. (7/25/16 Trial Court Order; Docket Entries, R.R. at 20a-21a.) On August 23, 2016, Muller timely appealed the trial court's order.[1] The Club filed a cross-appeal, but discontinued its cross-appeal on October 3, 2016. Janus and Dunn did not appeal the trial court's order.

---

[1] Muller filed his appeal to the Superior Court. Although the order denying Muller's post-trial motions did not enter judgment, this defect was cured by the entry of judgment on September 30, 2016. On October 17, 2016, the Superior Court transferred Muller's appeal to this Court.

9

In this Court, Muller argues that the trial court erred in upholding the Club Board's suspension of him from his position as Membership Secretary and suspension of his membership and contends that he remains a member of the Club because he renewed his membership for 2014-2015 and was improperly prevented by the Club from renewing his membership for 2015-2016.[2] We address each of these arguments in turn.[3]

### *The Suspensions*

The Nonprofit Corporation Law of 1988 (Nonprofit Corporation Law) provides that "[m]embership in a nonprofit corporation … shall be governed by the rules of admission, retention, suspension and expulsion, prescribed in bylaws adopted by the members, except that the rules shall be reasonable, germane to the purpose or purposes of the corporation and equally enforced as to all members of the same class." 15 Pa. C.S. § 5751(a). The Club's 2014 bylaws provide for and

---

[2] Our review is limited to determining whether the trial court committed an error of law or abused its discretion or whether its findings of fact are not supported by the evidence. *Morgan v. Richter,* 724 A.2d 983, 985 (Pa. Cmwlth. 1999). Questions of credibility and the weight to be given to evidence are exclusively within the province of the trial court. *Id.*

[3] The Club argues that the trial court's order can be sustained regardless of the merits of Muller's arguments on the ground that Muller is barred from relief by the doctrine of unclean hands. We do not agree. Under the doctrine of unclean hands, a court may deny equitable relief where the person seeking such relief acted unfairly or with fraud or deceit with respect to the matter at issue. *Barcia v. Fenlon*, 37 A.3d 1, 6-7 (Pa. Cmwlth. 2012). The trial court found that Muller acted in this matter with fraud, deceit and bad faith and that the unclean hands doctrine applied. (4/13/16 Trial Court Decision at 9-10.) The trial court, however, did not merely deny Muller equitable relief, but granted equitable relief to the Club and affirmatively ruled that Muller is not a member of the Club. (*Id.* at 7 & Order ¶1.) The doctrine of unclean hands is a basis only for the denial of equitable relief and cannot support a grant of affirmative relief against the party who acted with unclean hands. *Keystone Commercial Properties, Inc. v. City of Pittsburgh*, 347 A.2d 707, 709 (Pa. 1975). We therefore cannot base our affirmance of the trial court's order on its finding that Muller's conduct constituted unclean hands.

limit expulsion from membership, but do not contain any provisions concerning the suspension of members. The 2014 bylaws also do not provide for or prohibit or restrict the suspension or removal of Board members from the Board or from their position as officers of the Club.

This silence does not by itself preclude suspension of membership. While the Nonprofit Corporation Law contains provisions that limit expulsion and termination of membership in the absence of a bylaw and that restrict transfer of membership in the absence of a bylaw, 15 Pa. C.S. § 5769(a), (b), (d), it does not prohibit or restrict suspension in the absence of a bylaw. *Compare* 15 Pa. C.S. § 9126(a)(1) (providing with respect to unincorporated associations that "[i]f there are no applicable governing principles, a person may become a member or be suspended, dismissed or expelled only with the approval of the members").

A nonprofit corporation is not restricted to taking only those actions specifically set forth in the corporation's articles of incorporation or bylaws. *Peters Creek United Presbyterian Church v. Washington Presbytery of Pennsylvania*, 90 A.3d 95, 121 (Pa. Cmwlth. 2014) (*en banc*); *Anderson v. Colonial Country Club*, 739 A.2d 1118, 1121-23 (Pa. Cmwlth. 1999) (board of directors had authority to impose assessment on members to meet club's financial needs even though bylaws did not provide for assessments). The Club's 2014 bylaws provide that "the Board of Directors … shall manage the affairs of the club between meetings." (2014 Bylaws Art. 9, R.R. 30a.) Section 5721 of the Nonprofit Corporation Law provides:

> Unless otherwise provided by statute or in a bylaw adopted by the members, all powers enumerated in section 5502 (relating to general powers) and elsewhere in this subpart or otherwise vested by law in a nonprofit corporation shall be exercised by or under the authority of, and the business and affairs of every

11

> nonfprofit corporation shall be managed under the direction of, a board of directors. If any such provision is made in the bylaws, the powers and duties conferred or imposed upon the board of directors by this subpart shall be exercised or performed to such extent and by such other body as shall be provided in the bylaws.

15 Pa. C.S. § 5721 (emphasis added). The powers of the board of directors enumerated in Section 5502 include the power "[t]o conduct [the corporation's] business [and] carry on its operations," "[t]o elect or appoint and remove officers, employees and agents of the corporation [and] define their duties," and "[t]o have and exercise all of the powers and means appropriate to effect the purpose or purposes for which the corporation is incorporated." 15 Pa. C.S. § 5502(a)(15), (16), (18).

In addition, Section 5726(b) of the Nonprofit Corporation Law provides:

> Unless otherwise provided in a bylaw adopted by the members, the board of directors may declare vacant the office of a director who has been judicially declared of unsound mind or who has been convicted of an offense punishable by imprisonment for a term of more than one year, or for any other proper cause which the bylaws may specify, or if, within 60 days, or other time as the bylaws may specify, after notice of selection, a director does not accept the office either in writing or by attending a meeting of the board of directors and fulfill the other requirements of qualification as the bylaws may specify.

15 Pa. C.S. § 5726(b) (emphasis added). This statutory provision grants the board of directors the power to remove a director for cause where the corporation's bylaws do not address removal of directors. *Lutz v. Tanglewood Lakes Community Association, Inc.*, 866 A.2d 471, 474-75 (Pa. Cmwlth. 2005), *appeal discontinued*, (Pa., No. 73 MAP 2005, filed December 2, 2005). In *Lutz*, this Court upheld the

12

removal for cause of a director of a nonprofit corporation, although the corporation's bylaws did not provide for such removal, stating that "[a]s a matter of law, we hold that Section 5726(b) of the Nonprofit Corporation Law of 1988, 15 Pa. C.S. § 5726(b), permits a board of directors to remove a director for proper cause irrespective of whether the organization's bylaws specify what constitutes 'proper cause.'" *Id.* at 475. The Court explained that

> [t]he legislature's default provision is that a [b]oard may remove a director for cause. The non-profit corporation still retains the ultimate authority to restrict that power through an appropriate bylaw provision, as provided in the introductory clause [of Section 5726(b)].

*Id.* at 475 n.9.

The Board's suspension of Muller as Membership Secretary was within its powers under the Club's bylaws and the Nonprofit Corporation Law. Given Muller's use of his position to act unilaterally for the Club in violation of instructions from the Board, the Board had cause to remove him as Membership Secretary. *See Moore v. The Lighthouse*, 6 Pa. D.&C.3d 320, 327-32 (1977) (Takiff, J.) (upholding board of directors' removal of board members and suspension of board committee for "refusal to abide by and implement" board decision). Under Sections 5502(a)(16) and 5726(b) of the Nonprofit Corporation Law, the Board therefore had authority to suspend him from that officer and director position in April 2014 before his term of office expired, notwithstanding the absence of specific authorization in the Club's bylaws. 15 Pa. C.S. §§ 5502(a)(16), 5726(b); *Lutz*, 866 A.2d at 475.

The Board's direction that Muller return the Club's membership records and suspension of his membership were also within the Board's powers to manage the Club under its bylaws and Sections 5502 and 5721 of the Nonprofit

13

Corporation Law. In carrying out its responsibilities to conduct the Club's business, the Board was entitled to possession of Club property that the Club used to manage its affairs. Because Muller was properly suspended as Membership Secretary, the Board acted within its powers to manage the Club in directing him to return the Club's membership records. The Board suspended Muller's membership until he complied with the Board's directive to return the Club's membership records. (4/13/16 Trial Court Decision at 6; 3/7/16 N.T. at 44-45, 214-15; Muller Ex. 2, R.R. at 46a.) Absent a restriction in the bylaws, such a suspension of a member to obtain the return of Club records used in the Club's operations that were being improperly withheld by the member is within the Board's authority to manage the Club.

Muller argues that the suspension of his membership amounted to a *de facto* expulsion and therefore violated the restrictions on expulsion in the Club's 2014 bylaws and termination of membership in Section 5769 of the Nonprofit Corporation Law. We do not agree.

A suspension is subject to restrictions on expulsion and termination of membership if it in fact terminates the membership and is not temporary or subject to being automatically lifted upon the member's compliance with his obligations to the corporation. *Hart v. Manning*, 828 A.2d 5, 11-12 (Pa. Cmwlth. 2003) (suspension for nonpayment where member "had lost her membership status" was subject to statutory requirements for termination of membership); *Quaker City Yacht Club v. Williams*, 429 A.2d 1204, 1205-06 & n.4 (Pa. Cmwlth. 1981) (suspension for nonpayment of dues that did not comply with statutory restriction on termination of membership was invalid where suspension was not lifted upon payment and member could be reinstated only if membership unanimously

14

approved reinstatement). That was not the case here. The suspension of Muller's membership was not a permanent termination of his membership in the Club. Rather, Muller was suspended until he complied with the Board's directive to return the Club's records. While the suspension lasted for a period of years, that is because Muller refused to return all of the Club's records and the reason for the suspension therefore remained. As late as March 2016, Muller still had not fully complied with the directive to return the records. (3/7/16 N.T. at 207-08; 3/9/16 N.T. at 59.)

Accordingly, the trial court correctly held that the Board acted within its authority under the Nonprofit Corporation Law in suspending Muller and that Muller's membership remained validly suspended at all relevant times.

*Membership Renewal*

Unlike its silence on whether suspension of membership is permitted in the absence of a bylaw provision, the Nonprofit Corporation Law permits membership termination of membership only where and in the manner provided in the corporation's bylaws. Section 5769 of the Nonprofit Corporation Law provides with respect to termination of membership:

> (a) General rule.--<u>Membership in a nonprofit corporation shall be terminated in the manner provided in a bylaw adopted by the members.</u> If membership in any such corporation is limited to persons who are members in good standing in another corporation, or in any lodge, church, club, society or other entity or organization, the bylaws shall in each case define the limitations and may provide that failure on the part of a member to keep himself in good standing in the other entity or organization shall be sufficient cause for terminating the membership of the member in the corporation requiring such eligibility.

15

(b) Expulsion.--
(1) A member shall not be expelled from any nonprofit corporation without notice, trial and conviction, <u>the form of which shall be prescribed by the bylaws</u>.
(2) Paragraph (1) shall not apply to termination of membership pursuant to section 5544 (relating to dues and assessments).

15 Pa. C.S. § 5769(a), (b)(1)-(2) (emphasis added). Section 5544 of the Nonprofit Corporation Law provides:

(c) Enforcement of payment.--<u>A nonprofit corporation may make bylaws</u> necessary to enforce the collection of dues or assessments, <u>including provisions for the termination of membership, upon reasonable notice, for nonpayment of dues or assessments</u>, and for reinstatement of membership.

15 Pa. C.S. § 5544(c) (emphasis added).

The only method of or basis for termination of membership provided in the Club's 2014 bylaws, other than expulsion by a two-thirds vote of the members, was termination of membership for failure to pay dues after a 30-day written notice of a delinquency. (2014 Bylaws Art. 4 § 2, R.R. at 29a.) Muller timely paid his dues for 2014-2015 to the Club Treasurer, albeit surreptitiously, and the dues were received by the Club. While Muller did not submit the renewal form that the Club had in practice required for continued membership, that requirement was not set forth as a ground for termination of membership in the 2014 bylaws. The trial court therefore erred in holding that the 2014-2015 renewal process terminated Muller's membership.

This error does not, however, require reversal. This Court may affirm a trial court's order where the result reached by trial court is correct for reasons different from those on which the trial court relied. *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1023 (Pa. Cmwlth. 2014); *Guy M. Cooper, Inc. v. East*

16

*Penn School District*, 903 A.2d 608, 618 & n.9 (Pa. Cmwlth. 2006). The trial court's April 13, 2016 order decreed that as of that date Muller "is not now a member of Northern Chester County Sportsman's Club." (4/13/16 Trial Court Decision, Order ¶1.) The trial court based this decree not only on its conclusion that Muller did not validly renew his membership for 2014-2015, but also on its determination that he did not renew his membership for 2015-2016.

The 2015 bylaws in effect at the time of renewal for the Club's 2015-2016 membership year differed significantly from the 2014 bylaws. Unlike the 2014 bylaws, the Club's 2015 bylaws provide that membership must be renewed annually and that if a member fails to timely renew, he must reapply as a new member. (2015 Bylaws, Art. 4 § 2, R.R. at 64a.) Under these bylaws, Muller's membership in the Club ceased if he did not renew his membership for 2015-2016. Muller argues that he sought to renew his membership at the August 2015 membership meeting and that the Club improperly refused to permit him to renew. The 2015 bylaws, however, prohibited members not in good standing from renewing their membership. (2015 Bylaws, Art. 4 § 3, R.R. at 64a.) Muller remained suspended and was therefore not a member in good standing in July and August 2015 because of his continued refusal to return Club records. The Board's refusal to permit Muller to renew his membership for 2015-2016 was therefore proper under the 2015 bylaws.

Muller argues that the 2015 bylaws were not validly enacted and must therefore be disregarded.[4] The Nonprofit Corporation Law provides that where amendment of the bylaws is to be voted on at a meeting,

---

[4] The trial court's ruling that Muller waived this issue is incorrect. Muller raised the issue of whether the 2015 bylaws were validly adopted both before the trial court's decision and in his
**(Footnote continued on next page…)**

17

written notice shall be given to each member entitled to vote that the purpose, or one of the purposes, of a meeting is to consider the adoption, amendment or repeal of the bylaws. There shall be included in or enclosed with the notice a copy of the proposed amendment or a summary of the changes to be effected thereby.

15 Pa. C.S. §5504(a). The Club's 2014 bylaws required that votes on amendments to the bylaws be "taken at two (2) successive meetings, by two thirds majority vote of members present, each member of the club to be notified of such vote in writing, posting at club and on the website." (Bylaws Art. 15 § 1, R.R. at 32a (emphasis omitted).) Muller does not dispute that the Club's membership voted by the requisite two-thirds majority at two consecutive meetings in June and July 2015 to adopt the new bylaws.

Rather, he attacks the validity of the 2015 bylaws only on the grounds that he was not sent notice of the proposed amendment and that the notice did not include a copy of the proposed amendment. These arguments fail. Because Muller's membership was still suspended, he was not a "member entitled to vote" to whom notice of the amendment is required under Section 5504(a) of the Nonprofit Corporation Law. Therefore the failure to send him notice did not violate the requirements for a valid amendment of bylaws. Contrary to Muller's contention, neither the Club's 2014 bylaws nor the Nonprofit Corporation Law required that a copy of proposed bylaw amendments be sent to members. The 2014 bylaws required only notice of the vote to amend. (Bylaws Art. 15 § 1, R.R. at 32a.) The Nonprofit Corporation Law required only that the notice include or enclose "a copy of the proposed amendment <u>or a summary of the changes</u> to be

---

**(continued…)**
post-trial motion and brief. (3/25/16 Muller Proposed Findings of Fact and Conclusions of Law (C.L.), C.L. ¶¶12-14; Muller Post-Trial Motion ¶30; Muller Post-Trial Motion Brief at 18-19.)

18

effected thereby." 15 Pa. C.S. § 5504(a) (emphasis added). The postcard that the Club sent concerning the bylaw amendment votes provided a summary of the changes and advised members that they could view the proposed new bylaws in their entirety on the Club's website. (Plaintiff Ex. 2 at 2.) The Club also sent email notifications to members that provided both a summary and a link to the website to access the proposed new bylaws. (*Id.* at 3, 5.) Accordingly, the notice to members was sufficient and Muller has not shown that the 2015 bylaws were invalidly enacted.

Because the Board's suspensions of Muller were within its authority under the Club's 2014 bylaws and the Nonprofit Corporation Law and Muller did not satisfy the renewal requirements for continued membership under the Club's 2015 bylaws, we affirm the order of the trial court.

_____
JAMES GARDNER COLINS, Senior Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Northern Chester County Sportsmen's Club | : | |
| | : | |
| | : | |
| v. | : | |
| | : | No. 1933 C.D. 2016 |
| John Mark Muller and Benjamin T. Janus and William J. Dunn and John Doe #3 | : | |
| | : | |
| | : | |
| | : | |
| Appeal of: John Mark Muller | : | |

# **O R D E R**

AND NOW, this 21st day of November, 2017, the judgment of the Court of Common Pleas of Chester County in the above captioned matter is AFFIRMED.

_____

JAMES GARDNER COLINS, Senior Judge